Filed 2/10/22  P. v. McCoy CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074238 |
| v. | (Super.Ct.No. RIF130139) |
| LAKEITH LEROY MCCOY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.
Reversed with directions.

Richard Power and Siri Shetty, under appointment by the Court of Appeal, for
Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Matthew
Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant and appellant, LaKeith LeRoy McCoy, appeals from the November 22, 2019 order of the superior court, denying his petition for resentencing on his 2009 conviction for the attempted premeditated murder of Anthony Thompson under the natural and probable consequences doctrine. (Pen. Code, § 1170.95)[1] In an unpublished decision, we affirmed the order denying McCoy's petition on the ground that persons convicted of attempted murder were not entitled to relief under section 1170.95. (*People v. McCoy* (Jan. 11, 2021, E074238) [non pub. opn.] (*McCoy II*).)

Our Supreme Court granted review, and while review was pending, the Legislature enacted and the Governor signed Senate Bill No. 775 into law. (Senate Bill 775) (Stats. 2021, ch. 551, § 2.). Senate Bill 775 amended section 1170.95 to clarify, among other things, that persons convicted of attempted murder under the natural and probable consequences doctrine are eligible for resentencing under the statute. (*Id.* at §§ 1-2.)

Our Supreme court transferred the matter back to this court with directions to vacate our January 11, 2021 opinion in *McCoy II* and to reconsider the cause in light of Senate Bill 775. We have since vacated our decision in *McCoy II*, and the parties have filed supplemental briefs addressing whether McCoy is entitled to resentencing under section 1170.95 as amended by Senate Bill 775.

---

[1] Undesignated statutory references are to the Penal Code.

The parties agree that the 2019 order denying McCoy's petition must be reversed and the matter remanded with directions to conduct further proceedings under section 1170.95. We agree that this is the appropriate disposition of this appeal.

## II. ADDITIONAL BACKGROUND

### A. *McCoy's 2009 Convictions and Sentence*

In 2011, this court affirmed McCoy's 2009 judgment of conviction and sentence for the attempted premeditated murder of Thompson (§§ 664, subd. (a), 187, count 1) under the natural and probable consequences doctrine, along with four other convictions. (*People v. McCoy* (May 16, 2011, E048737) [nonpub. opn.] (*McCoy I*).) McCoy was convicted of assaulting Thompson and a second victim, Brandon Jones, with a firearm, and of falsely imprisoning both men. (§§ 245, subd. (a)(2), 236, counts 2-5.) In each of the five counts, McCoy personally used a firearm. (§ 12022.53, subd. (b), count 1; § 12022.5, subd. (a), counts 2-5.)

On July 1, 2009, McCoy was sentenced to 24 years plus life in prison,[2] comprised of the upper term of 4 years on count 3, plus 10 years for the personal use enhancement on count 3, plus life in prison on count 1 (with a minimum parole eligibility period of seven years), plus 10 years for the personal use enhancement on count 1. Concurrent terms were imposed on count 2, 4, and 5. In 2018, McCoy's determinate and

---

[2] This court's 2011 decision in *McCoy I* mistakenly states on page 3 that McCoy was sentenced to "24 years plus life *without* the possibility of parole." (Italics added.) The phrase "without parole" is a clerical error. McCoy was actually sentenced to life *with the possibility of parole* on his attempted premeditated murder conviction (§ 664, subd. (a)), subject to a seven-year minimum parole eligibility period. (§ 3046, subd. (a).)

indeterminate abstracts of judgment were amended to correct clerical errors.  His

May 16, 2018 abstracts of judgement correctly reflect his aggregate sentence.

B. *The Evidence Supporting McCoy's 2009 Convictions*

Here, we summarize the evidence discussed in *McCoy* I, our decision upholding

McCoy's 2009 judgment of conviction and sentence, for the benefit of the court and

parties on remand, but without prejudice to the parties' rights to present additional

evidence in support of and in opposition to McCoy's petition on remand.  (§ 1170.95,

subds. (c), (d)(3).)  As our Supreme Court has observed, appellate opinions are generally

part of the record of conviction, but their probative value is case specific and they

" 'might not supply all answers.' "  (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)

In early 2006, Yolanda Renee Miles was living in an apartment in Moreno Valley

with her boyfriend, Ed Knox, Knox's older brother, Christian, and Thompson.  Knox

owed Thompson money for selling drugs for Knox, and Thompson was angry because

Knox would not pay him.  Thompson believed that Knox owed him $1,000 and wanted

the money so that he could move to Las Vegas.

One day, Knox and Thompson nearly got into a fistfight, and Knox made

Thompson move out of the apartment.  At some point, Thompson told Miles that Knox

was cheating on Miles.  Miles agreed to let Thompson know when Knox was not at home

so that Thompson could enter the apartment and take Knox's money, around $15,000.

On March 24, 2006, Miles contacted Thompson by telephone and told him to

come to the apartment because Knox was not there.  Thompson asked Jones to

4

accompany him to the apartment, and Jones did so, expecting a share of Knox's money, drugs, or both. Jones was a friend of Knox's older brother, Christian.

When Thompson and Jones arrived at the apartment, Miles allowed them inside and directed them into Knox's bedroom, where Thompson grabbed $60 to $80 that was laying on a desk. Miles was crying but would not tell Thompson why. Miles told Thompson and Jones that the rest of Knox's money was under the bed in the master bedroom. After Thompson and Jones went into the master bedroom, Knox and McCoy "jumped out of a bathroom and, with guns drawn, ordered Thompson and Jones to 'freeze.' "

Knox pointed his gun at the back of Thompson's head while McCoy pointed his gun at Jones's forehead. Both guns had potatoes on their ends to act as silencers. Knox said, " 'You came to rob me without a gun. You must be stupid.' " Knox and McCoy went through Thompson's and Jones's pockets, took their cell phones and other belongings, pushed them into the living room, and told them to lie on their stomachs.

McCoy's demeanor " 'definitely seemed a lot more aggressive' " than Knox's. McCoy told Thompson and Jones not to move or " 'we'll shoot you' "; that they were " 'stupid' for coming there without guns"; they had " 'fucked up' "; and they were " 'going to get it.' " And, after Knox said he could not believe that Thompson was trying to " 'rob' " him, McCoy said to Knox, " 'I told you so,' " smiled, and licked his lips.

While Thompson and Jones were on their stomachs in the living room, Knox and McCoy were discussing what they were going to do with Thompson and Jones. McCoy told Knox to call someone so that they could put Thompson and Jones in a car, drive

them to a canyon where no one would see, shoot them, burn their bodies, and leave them there. Knox was using a telephone and was telling someone, " 'We should just kill them right here,' " while McCoy said, " 'No. I am going to get a car and we are going to do this the right way.' " Thompson believed he was going to be killed in the apartment.

When Knox and McCoy were not paying attention, Thompson got up from the living room floor and ran to the front door. Miles yelled that Thompson was running and grabbed Thompson's right arm and shirt as he unlocked the door. Knox told Thompson not to run and fired his gun after Thompson had one foot outside the door, hitting Thompson in the back above his waistline. Thompson continued to run, and McCoy followed Thompson out of the apartment.

Thompson made it across the street from the apartment and collapsed on a sidewalk. A sheriff's deputy was driving in the area, saw Thompson collapse, and called an ambulance. Before Knox shot Thompson, Jones did not believe that Knox and McCoy would shoot Jones and Thompson and thought that Knox and McCoy were only trying to scare Jones and Thompson. But after Knox shot Thompson, Jones thought he was going to die. After McCoy followed Thompson out of the apartment, Knox told Jones that Knox was not going to kill Jones because Jones knew Knox's brother, and Knox began to cry. Jones then left the apartment, flagged down a patrol officer, and described what had happened to the patrol officer.

Thompson nearly died from his gunshot wound, which pierced his pancreas, traveled to his chest cavity, and made two holes in a chamber of his heart. Thompson's surgeon called Thompson "the 'miracle guy' " because " 'most people don't recover'

6

from such an injury." Thompson required additional surgeries; his spleen had to be removed and swelling in his legs caused part of his leg muscle to atrophy, requiring the removal of some of his leg muscle. Thompson was no longer able to walk " 'normally' " at the time of trial in 2009.

McCoy testified in his own defense and denied having any intention of harming Thompson or Jones. McCoy claimed he was about to call the police when he heard a gunshot. After Knox shot Thompson, McCoy asked Knox, " ' "What are you doing?" ' " and Knox responded, " ' " I didn't mean to." ' " McCoy claimed he ran outside, heading for his car, not for Thompson. McCoy did not stop when he saw the police talking to Thompson because he was on probation.

C. *McCoy's Resentencing Petition and the Superior Court's Ruling*

In 2019, McCoy filed an original and an amended petition to vacate his attempted murder conviction and to be resentenced on his other convictions, on the ground his attempted murder conviction was based on the natural and probable consequences doctrine. (Former § 1170.95, subd. (a).) The People opposed the petition partly on the ground that Senate Bill 1437 did not apply to attempted murder. The superior court agreed, and on November 22, 2019, denied and dismissed the petition. McCoy timely appealed from the dismissal order.

## III.  DISCUSSION

Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437) amended sections 188 and 189, effective January 1, 2019, to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony murder rule. (*Lewis*, *supra*,

7

11 Cal.5th at pp. 957, 959; Stats. 2018, ch. 1015, § 1, subd. (f).) Under sections 188 and 189, as amended, murder liability can no longer be imposed on a person who was not the actual killer, who did not act with the intent to kill, or who was not a major participant in the underlying felony who acted with reckless indifference to human life. (*Lewis*, at p. 959.)

Senate Bill 1437 also added section 1170.95 to the Penal Code. (Stats. 2018, ch. 1015, § 4.) In its original form, section 1170.95 allowed persons convicted of murder under the former law, but who could not be convicted of murder under the amended law, to petition the sentencing court to vacate their murder convictions and to be resentenced on any remaining convictions. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1005.)

Senate Bill 775 "clarifies" that "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) To this end, Senate Bill amended section 1170.95, effective January 1, 2022, to apply, as relevant here, to persons convicted of attempted murder under the natural and probable consequences doctrine. (*People v. Montes*, *supra*, 71 Cal.App.5th at p. 1006.)

McCoy was prosecuted for and convicted of the attempted premeditated murder of Thompson under the natural and probable consequences doctrine. (*McCoy I*, *supra*, at p. 28.) In *McCoy I*, we upheld McCoy's attempted murder conviction. (*Id*. at pp. 1-3.) We held substantial evidence showed that Knox intended to kill Thompson when Knox shot Thompson, and that the attempted murder was a reasonably foreseeable consequence

8

of Knox's and McCoy's firearm assaults on Thompson and Jones. (*Id*. at pp. 23, 26-28.) Substantial evidence also showed that the attempted murder was willful, deliberate, and premeditated, based on the actions and statements of McCoy and Knox in Knox's apartment before Knox shot Thompson. (*Id*. at pp. 29-33.)

In their supplemental briefing, the parties agree that the 2019 order denying McCoy's section 1170.95 petition must be reversed and the matter remanded to the superior court with directions to conduct further proceedings under section 1170.95. We agree that this is the appropriate disposition of this appeal. It is undisputed, and the record shows, that McCoy was convicted of the attempted premeditated murder of Thompson based on a natural and probable consequences theory. (§ 1170.95, subd. (a).)

Senate Bill 775 also amended section 1170.95 to codify the holdings of *Lewis*, *supra*, 11 Cal.5th 952 and to address the evidence a court may consider at a resentencing hearing. (Stats. 2021, ch. 551, § 1, subds. (b), (d); § 1170.95, subds. (c), (d).) In light of the extensive amendments that Senate Bill 775 made to section 1170.95, including to subdivisions (c) and (d) of the statute, we also direct superior court on remand to allow McCoy to file an amended petition if he so requests.

## IV. DISPOSITION

The order denying McCoy's resentencing petition is reversed. (§ 1170.95.) The matter is remanded to the superior court with directions to conduct further proceedings on McCoy's petition pursuant to section 1170.95, as amended, and to allow McCoy to file an amended petition if he so requests.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS          
J.

We concur:


CODRINGTON     
        Acting P. J.


SLOUGH       
        J.